## Nemitz, Appellant, v. Bell Telephone Company of Pennsylvania.

Argued June 14, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

*Marvin H. Levin,* for appellant.

*Dolores B. Spina,* with her *Pepper, Hamilton and Scheetz,* for appellee.

OPINION BY HOFFMAN, J., September 19, 1973:

In this appeal, we must decide if the lower court erred in directing a verdict in favor of the defendant, who admitted a breach of contract.

The instant suit was brought by the appellant, Herbert Nemitz, individually and t/a Del Val Tile Distributors, to recover for loss of business and profits allegedly resulting from the defendant's contractual breach in failing to publish appellant's advertisements in the Yellow Pages Directory.

The case was tried before the Honorable Judge Francis X. McCLANAGHAN of the Court of Common Pleas of Philadelphia and a jury, on November 27 and 28, 1972. At the close of plaintiff's case, defendant, Bell Telephone Company, moved for a compulsory nonsuit. Defendant's motion was refused.[1] At the close of defendant's case, Bell Telephone moved for a directed verdict. That motion was granted and appellant's post-trial motions were denied. From this order, an appeal to this Court was taken.

---

[1] The trial court granted a motion for compulsory nonsuit as to the defendant, The Reuben H. Donnelly Corporation. No appeal was taken from this order.

As we said in *Continental Super Market Food Service, Inc. v. Soboski,* 210 Pa. Superior Ct. 304, 309, 232 A. 2d 216 (1967), "On a motion for a directed verdict, the facts must be considered in the light most favorable to the party against whom the motion is made. . . . '[T]he court must accept as true all the evidence of that party which supports his contention . . . and must reject all the adverse testimony of the party seeking a directed verdict.' Lott v. Guiden, 205 Pa. Superior Ct. 519, 523, 211 A. 2d 72 (1965)." In so viewing the facts of the instant case, the record discloses:

In November 1961, Jack Nemitz, who owned two stores known as Del Val Tile Distributors, sold the businesses to his two brothers. Bernard Nemitz purchased the store located at 6441 Market Street in Upper Darby; appellant purchased the one at 4537 N. 5th Street in Philadelphia. Though the two brothers held separate interests in the businesses, they continued to run each establishment under the former name of Del Val Tile Distributors. They agreed, however, to split the sales territory geographically—Bernard's Market Street store would pull in those customers in and around the Upper Darby area, and Herbert's 5th Street store would attract purchasers from the New Jersey, Delaware, Bucks County and North Philadelphia areas.

At trial appellant testified that in early 1962 he ordered four advertisements to appear in the 1962 Yellow Page Directory. All the advertisements appeared in the Directory with the exception of one under the listing "Ceramic Tile-Manufacturers and Distributors". Mr. Nemitz further said that in June of 1962 he again placed advertisements in the Directory, and that the same listing was omitted. While appellant's business was listed under the headings of "Tile-Ceramic", "Tile Contractors" and "Tile-Floor Covering", the omitted listing was allegedly crucial to appellant's business. Appellant testified that the entire market at that time depended

upon distributorships. He said that there were no retail outlets for ceramic tile and the "do-it-yourself" purchasers looked to the distributor. Mr. Nemitz maintained that his suppliers refused to give him a 20% discount because his business was not listed under the "Manufacturers and Distributors" listing in the Yellow Pages.

While it is true that appellant was unable to pinpoint his losses with mathematical exactitude, he did produce certain evidence in support of his contentions. Appellant first produced a memorandum copybook giving the names and addresses of customers at the 5th Street store under its original ownership. He established that such customers were geographically proximate to his store coming primarily from North and Northeast Philadelphia, Bucks County, New Jersey and Delaware. Appellant then produced records of sales made at his brother's store during 1962 and 1963. During this period of time, the Upper Darby store appeared in the Yellow Pages under "Manufacturers and Distributors" and appellant's store was not so listed. A significant number of customers from the areas geographically proximate to the 5th Street store patronized the 64th Street store. As both businesses had been and were at all times operated under the name of Del Val Tile Distributors, appellant contended that this loss of customers, amounting to sales of $5,765.00 and $2,270.90 for the two relevant years, had taken place because these purchasers had been looking for his business and mistakenly identified the 64th Street store as that entity.

Appellant also produced records of his gross sales from the operation of the 5th Street store for the years 1962-1965. During the two years that the advertisement was omitted, appellant had gross sales of $81,000 and $135,000 respectively. In 1964, when the ad reappeared, his sales rose to $195,000. In 1965, they totalled $215,000. Appellant attributed this dramatic in-

crease in gross sales to the inclusion of his business in the "Manufacturers and Distributors" listing.

Appellant also testified that during the years the ad was omitted suppliers charged 20% more than they would customarily charge other distributors. This increase in the cost of materials caused the margin of profit from sales to be significantly diminished. Mr. Nemitz indicated, however, that when the ad reappeared in 1964, the standard deductions and allowances were renewed, and the profit margin markedly improved.

While defendant, Bell Telephone, denied the existence of the 1962 order for a listing under "Manufacturers and Distributors", it admitted that the 1963 order was placed and that the omission was made. There is not dispute, therefore, with appellant's contention that a breach of contract occurred through the failure of Bell Telephone to place the ad under the alleged critical listing of "Manufacturers and Distributors".[2]

The plaintiff has the burden of proving all of the operative facts of his cause of action by a fair preponderance of the evidence. *Watkins v. Prudential Ins. Co.*, 315 Pa. 497, 173 A. 644 (1934). Before the case is submitted to the jury for deliberation, the trial court must be satisfied that the plaintiff has made out a case with sufficient evidence to furnish the jury with a reasonable basis upon which a verdict may be returned. As our Supreme Court stated in *Cuthbert v. Philadelphia*, 417 Pa. 610, 615-616, 209 A. 2d 261 (1965) : "The jury may not be permitted to reach its verdict on the basis of speculation or conjecture; there must be evidence upon which its conclusion may be logically based : Smith v. Bell Telephone Co. of Pa., 397 Pa. 134, 153 A. 2d 477 (1959) ; Shoefield v. King, 388 Pa. 132, 130 A. 2d 93 (1957)."

---

[2] By this opinion, we make no judgment as to the credibility or validity of appellant's claim. We merely hold that viewing the evidence in the light most favorable to the plaintiff, plaintiff should have been permitted to take his case to a jury.

Since Bell Telephone admitted a breach of contract, a directed verdict was entirely improper. As our Supreme Court said in *Elia v. Olszewski*, 368 Pa. 578, 582, 84 A. 2d 188 (1951), ". . . in no event [can] a verdict for the defendant be justified in a case where the breach of contract is admitted. Plaintiff [is], at the least, entitled to nominal damages which verdict would carry costs. However, we have heretofore said that we will not ordinarily reverse on this ground *alone* where no request was made for the same at the trial and no establishment of a property right is involved: Bastian v. Marienville Glass Co., 281 Pa. 313, 126 A. 798 (1924)." See also *Freedom Oil Co. v. Williams*, 302 Pa. 51, 56, 152 A. 741 (1930). While appellant did not ask for nominal damages, we believe that appellant did more than just prove a breach of contract. He offered sufficient evidence from which a jury could determine (1) a causative relationship between the breach and business losses; and (2) an adequate means by which a jury could arrive at a damage award, if they chose to believe the breach actually caused the loss of business or profits.

The fact that appellant did not offer his proof of damages with mathematical precision does not render the damages unmeasurable. Many cases involve an inherent difficulty or impossibility of such proof. As our Supreme Court noted, in *Massachusetts Bonding & Ins. Co. v. Johnson & Harder, Inc.*, 343 Pa. 270, 279-280, 22 A. 2d 709 (1941):

"Williston on Contracts, Revised Edition, Vol. 5, lays down these principles in respect to measuring damages: Section 1345, p. 3776, 'Though any breach of contract entitles the injured party at least to nominal damages, he cannot recover more without establishing a basis for an inference of fact that he has been actually damaged . . . . Where substantial damage has been suffered, the impossibility of proving its precise limits is

no reason for denying substantial damages altogether.' Section 1346A, p. 3781: 'Various methods are used in proving prospective profits. These methods are not mutually exclusive, but often one method is more feasible than others. (1) . . . (2) Evidence of past profits in an established business furnish a reasonable basis for estimating future profits. (3) Profits made by others or by the plaintiff himself in a similar business or under a similar contract, where the facts were not greatly different may also afford a reasonable inference of the plaintiff's loss. . . .' Williston also says, section 1346, p. 3781: 'Where a breach of contract involves deprivation of a chance which has value in a business sense, a just reluctance will be felt by most courts to deny altogether the recovery of substantial damages.'

"The essence of the legal principles above cited is that compensation for breach of contract cannot be justly refused because proof of the exact amount of loss is not produced, for there is judicial recognition of the difficulty or even impossibility of the production of such proof. What the law does require in cases of this character is that the evidence shall with a fair degree of probability establish a basis for the assessment of damages." See also, *Silver v. Television City, Inc.,* 207 Pa. Superior Ct. 150, 158, 215 A. 2d 335 (1965).

For the reasons stated above, we reverse the order of the court below and remand the case for a new trial consistent with this opinion.